UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

JAMES WINSTON HONEYSUCKER, JR.
    (a/k/a "Ace")
    (a/k/a "Ace Sohood"),

        Defendant.
_____/

No. 1:19-cr-292

Hon. ROBERT J. JONKER
Chief U.S. District Judge

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
## TO EXCLUDE OUT-OF-COURT CROSS-RACIAL IDENTIFICATIONS

The defendant moves "to exclude from presentation at trial all evidence related to out-of-court cross-racial identifications." (R.93: MIL, PageID.549.) In the alternative, he asks the Court to instruct the jury on "the unreliability of cross-racial identifications" in a manner that encompasses (a) out-of-court identifications; (b) in-court identifications; and (c) all "evidence (such as security-camera footage) that could invite a cross-racial identification." (*Id.*, PageID.546-547.) The government opposes the motion.

**FACTUAL BACKGROUND**

The Superseding Indictment charges the defendant with committing robberies on August 12 (Count 1); September 14 (Counts 2-3); September 30 (Counts 4-5); and October 22 (Counts 6, 7). (R.21, Superseding Indictment, PageID.49.)

As explained below, the victims of the first three robberies identified the defendant as the person who robbed them. (The victim of the October 22 robbery did not participate

in a photo array, lineup, or other identification process.) According to police reports, it appears that none of the victims are the same race as the defendant.

The victim of the August 12 robbery identified the defendant as the perpetrator based, in part, on the fact that she had met him before the robbery; they were both members of the same motorcycle club; and she saw him again after the robbery. A police report describes her race as "U."

The victim of the September 14 robbery identified the defendant's photograph in an array of six photographs. The victim said, of the defendant's photograph: "the guy in picture 3 is probably the most accurate to what I can remember." The victim added that she felt "certain" of this, stating: "I really think that is him." A police report describes the victim's race as "White."

The victim of the September 30 robbery identified the defendant's photograph in an array of six photographs. The victim said, of the defendant's photograph, that she was 70% sure that was him. A police report describes the victim's race as "W."

## ARGUMENT

**I.    The Court Should Deny the Defendant's Motion to Exclude All Evidence Identifying the Defendant by a Person of a Different Race.**

The defendant argues that "all evidence related to out-of-court cross-racial identifications" should be excluded from evidence under Fed. R. Evid. 403(b). (R.93: MIL, PageID.549.) But he also fails to identify any facts or testimony that he believes justifies the exclusion of this evidence. According to the defendant, this is intentional. (*Id.*, PageID.545: "Mr. Honeysucker acknowledges that he is not presenting the common

brand of due-process challenge to a specific lineup/showup/photo array," but believes that his "position [] actually is not so radical given the current state of scientific and jurisprudential perspectives.")

In other words, the defendant has not even attempted to carry his burden of proving that "all evidence related to out-of-court cross-racial identifications" in this case is "substantially outweighed by a danger of . . . unfair prejudice," as Rule 403(b) requires. Yet he nevertheless requests an order that, as best the government can tell, would forbid anyone whose race is different than the defendant's from testifying that they saw him commit one of the robberies charged in the Superseding Indictment.[1]

The defendant identifies no court, state or federal, that has ever ordered the categorical exclusion of all cross-racial identifications, let alone "all evidence related to" them. Nor does he address the staggering implications such a ruling would have going forward. Among other things, if the Court were prepared to exclude "all evidence related to out-of-court cross-racial identifications" without any basis in the facts of this case, then the same ruling would presumably be appropriate in every criminal case that involves victims and defendants of different races.

The two cases the defendant cites do no support his extraordinary request.[2] In *United States v. Mariano*, the Eleventh Circuit affirmed the district court's decision to

---

[1] Each in-court identification is "related to" the out-of-court identification that occurred when the witness saw the robbery.

[2] Neither do the two secondary sources the defendant cites. (*See* R.93: MIL, PageID.544, citing a 2008 blog post by the Innocence Project and a 2015 law review article.) Neither supports or advocates the total exclusion of "all evidence related to out-of-court cross-racial identifications."

-3-

admit cross-racial identification testimony without providing an accompanying jury instruction—the opposite of the rulings he urges here. 636 F. App'x 532, 536–37, 538–39 (11th Cir. 2016). And in *People v. Boone*, the court ruled that trial courts should provide jury instructions on cross-racial identifications when requested to do so in an appropriate case; not that cross-racial identifications are forbidden. 91 N.E.3d 1194, 1197 (N.Y. 2017).

**II.     The Court Should Deny the Defendant's Motion for a Jury Instruction "on the Weaknesses" of Cross-Racial Identifications.**

"Identification instructions are within the discretion of the trial court," and "need only be given if there is a danger of misidentification due to a lack of corroborating evidence." *United States v. Jackson*, 347 F.3d 598, 607 (6th Cir. 2003). The same standard applies to cross-racial identifications. *United States v. Washam*, 468 F. App'x 568, 572 (6th Cir. 2012) (citing *Jackson*). Thus in *Washam*, the Sixth Circuit affirmed the district court's decision not to instruct the jury that "cross-racial identifications are inherently suspect" because "evidence corroborated the [cross-racial] identifications" at issue, including "evidence [that] connected [the defendant] to the getaway car from the [ ] robberies." *Id*.

The same result is proper here because, in this case, any identifications of the defendant are supported by significant corroborating evidence. To name a few:

(1) The defendant's getaway driver and co-defendant, Wilnell Henry, confessed to federal investigators; pled guilty; and has described in detail the defendant's commission of the robberies charged in Counts 2-7 of the Superseding Indictment. The government expects him to testify at trial.

-4-

(2) Cellular phone records for the defendant's cell phone numbers indicate that, when each robbery charged in the Superseding Indictment occurred, the defendant was near the robbery location. The same records indicate that, when the robberies charged in Counts 2-7 occurred, Henry was also near the robbery location, and was on the phone with the defendant.

(3) The government will present video recordings of all four robberies charged in the Superseding Indictment, each of which shows that the perpetrator's physique and overall appearance is consistent with the defendant's.

(4) As indicated in police reports the government produced in discovery, the victim of the robbery charged in Count 1 of the Superseding Indictment told police that she recognized the defendant because she had met him before.

(5) The defendant sent incriminating Facebook and text messages during the time period when the robberies were committed:

- "I think I'm going to turn myself in."

- "They not gone catch me yo."

- "I'm about to have to lay df low . . . I may be on the run."

- "I WONT BE NO GOOD TO ANYBODY IF IM IN A CELL . . . AT LEAST BEING OUT I CAN MAKE SHIT HAPPEN."

- "Life ain't the same for me here. ONE MISTAKE and I'm GONE FOR A LONG TIME. IDK WHY U THINK I JUST GOT IT OUT FOR YOU. BUT I GOTTA PLAY MY CARDS RIGHT . . . I can't stay here . . . We GOTTA GO . . . I can't be here . . . If they get me life is over for yearssssssss . . . the courts have your address."

(6) Three days before the October 22 robbery, which was committed in Battle Creek, the defendant sent the following message to Henry, who resides in Battle Creek: "Aye I'm making my way to the creek I need my pistol from your crib."

(7) The defendant made incriminating statements in recorded jail calls after he was arrested in October 2019. For example, during a discussion about efforts by police to match the money he was arrested with to the money stolen during the robberies, he said that some money would not match, but that other money might, and would "tie [him] to two." He then said: "And I'm not trying to do no years."

(8) The defendant was arrested in Chicago with over $10,000 cash and a pistol that appears to match the pistol used in the four robberies charged in the indictment.

\*   \*   \*

The defendant ignores the Sixth Circuit's corroboration standard, and asks the Court to instead adopt the rule that governs state courts in the State of New York. (R.93: MIL, PageID.546-49, citing *Boone*, 91 N.E.3d at 1197. In addition to being non-precedential and contrary to Sixth Circuit law, *Boone* is inapposite because, in that case, the "defendant, who is black, was found guilty entirely on the basis of the testimony of a single white witness identifying [the] defendant as the person who had robbed him." *Boone* at 1199. That is far from the case here.

## CONCLUSION

The government opposes the defendant's motion to categorically exclude "all evidence related to out-of-court cross-racial identifications" and alternative request for a jury instruction on the same subject.

                                                           Respectfully submitted,

                                                           ANDREW BYERLY BIRGE
                                                           United States Attorney

Dated: December 15, 2020                  */s/* Patrick J. Castle
                                                           PATRICK J. CASTLE
                                                           DANIEL Y. MEKARU
                                                           Assistant United States Attorneys